IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                    CIVIL ACTION NO.  2:24-cv-00685

APPROXIMATELY $2,004,184.65
IN UNITED STATES CURRENCY
FROM CITY NATIONAL BANK
ACCOUNT ENDING IN 4556,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Summers Medical Supply, LLC's ("Claimant") Motion to Dismiss Verified Complaint of Forfeiture. (ECF No. 10.) For the reasons discussed below, Defendant's motion is **GRANTED**. Except for three claims totaling $6,600, the complaint is **DISMISSED WITHOUT PREJUDICE**, and the Government is **GRANTED** leave to amend the complaint within fourteen days of the entry of this order. The funds at issue will for the time being remain in the possession of the United States Marshals Service pending further order of this Court.

*I.    BACKGROUND*

On November 26, 2024, the United States filed a Verified Complaint of Forfeiture against the Defendant currency worth approximately $2,004,184.65, which is located in a City National Bank account number ending in xxxxxx4556, in the name of Summers Medical Supply, LLC

1

("CNB Account"). (ECF No. 1.) The Government is pursuing this civil action *in rem* pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) and Supplemental Rule G(2), "to enforce the provisions for the forfeiture of defendant properties, constituting proceeds of, or which was used or intended to be used in any manner or part to commit or to facilitate the commission of one or more violations of 18 U.S.C. §§ 287, 1347,1349, 1956." (*Id.* at 1.)

As alleged in the complaint, the Defendant currency "was obtained through a conspiracy to fraudulently bill health care benefit programs in violation of 18 U.S.C. §§ 287, 1347, 1349, and that said monies were laundered through bank accounts in violation of 18 U.S.C. §§ 1956 and 1957." (*Id.* at 3.) The Government alleges that between June 14, 2022, and September 18, 2024, Claimant submitted false or fraudulent claims to the United States through the Medicaid Program for reimbursement of durable medical equipment, prosthetics, orthotics, and supplies ("DME") that were not medically necessary and were billed in violation of Medicare statutes, regulations, and polices. (*Id.* at 9.) The complaint identifies Dr. Govind Seth, a family medicine practitioner in Dundalk, Maryland; Dr. Oluremi Ilupeju, an obstetrics and gynecologist in Silver Spring, Maryland; and Dr. Martin Perlin, a hematologist in Mount Kisco, New York as the referring and ordering physicians for the DME. (*Id.* at 9.) According to the Government, many of the referenced claims were billed as phone calls, which does not meet the face-to-face requirement for providing DME. Through September 18, 2024, Claimant billed $8,806,978.31 and received $3,390,588.65. (*Id.*) A review of bank account statements and Medicare payments shows that payments made to Claimant were deposited into the CNB Account. (*Id.* at 13.)

An Amended Warrant of Arrest and Notice In Rem for the Defendant currency was issued by the Clerk of the Court on November 26, 2024. (ECF No. 4.) Claimant filed a Verified Claim

for the seized property on January 30, 2025. (ECF No. 9.) Subsequently, Claimant filed a Motion to Dismiss on February 20, 2025, (ECF No. 10), the Government responded on March 19, 2025, (ECF No. 13), and Claimant filed their reply on March 26, 2025, (ECF No. 15). Therefore, Claimant's motion is fully briefed and ripe for adjudication.

## II.   LEGAL STANDARD

Supplemental Rule G of the Federal Rules of Civil Procedure governs forfeiture *in rem* actions. Supp. R. G(1). A verified complaint for forfeiture must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. R. G(2)(f). At trial, the Government must "establish by a preponderance of the evidence, that the property is subject to forfeiture," and "that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(1) & (3). Under Supplemental Rule G(8), a claimant who establishes standing to contest forfeiture may move to dismiss the action under Rule 12(b). Supp. R. G(8)(b)(i). Although Rule 12(b) is the vehicle for filing a motion to dismiss in these actions, the pleading standard is higher than the generic civil standard under Rule 8(a) which only requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

However, "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D). This means that the "Government's forfeiture claim can advance forward in the face of a 12(b)(6) motion to dismiss even if the Government's complaint does not provide all the facts that would allow the Government to ultimately succeed in the forfeiture proceeding." *United States v. 630 Ardmore Drive*, 178 F. Supp. 2d 572, 581 (M.D.N.C.

2001). In other words, the Government "is required to plead sufficient facts to support a reasonable belief that the property is subject to forfeiture, it is not required to prove its case." *United States v. $5,988,31.33*, 2014 WL 1338889 (W.D. Tenn. 2014).

### III. ANALYSIS

The Government alleges that the Defendant currency constitutes or is derived from proceeds traceable to violations of 18 U.S.C §§ 287 (fraudulent claims), 1347 (health care fraud), and 1349 (conspiracy to commit health care fraud)[1]. (ECF No. 1 at 3.) These alleged offenses are addressed below.

#### A. Fraudulent Claims

Claimant argues that the Government fails to allege that Claimant knowingly submitted false claims. (ECF No. 10 at 6.) Claimant asserts that the complaint does not allege that Claimant knew the doctors were not conducting proper telehealth appointments, but rather, argues that Claimant routinely worked with doctors to prescribe DME if those doctors determined the DME was medically necessary. (ECF No. 15 at 5.) Furthermore, Claimant raises the point that the Government stated "[a]pproximately 95% of patients Dr. Ilupeju speaks with during the telehealth visit wants the DME item and meets the requirements for him to prescribe it" and "[m]ost patients did meet the requirements to be prescribed DME." (*Id.*) In response, the Government argues that just because a patient meets the requirements to be prescribed DME does not mean that the treatment is legitimate, medically reasonable, or billable. (ECF No. 12 at 3.)

---

[1] The Government further alleges that the Defendant currency was also property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957 (money laundering). The Government subsequently conceded in its response brief that "[t]he Government at this time, cannot prove by a preponderance of the evidence that [Claimant] engaged in money laundering." (ECF No. 13 at 5.) Therefore, the Court finds it unnecessary to address the money laundering allegations.

The Government asserts the fact that 168 individuals filed fraud hotline complaints "belies the assertion that these were routine and legitimate services." (*Id.* at 3-4.)

A violation of 18 U.S.C. § 287 (submission of fraudulent claims) requires the defendant to have (1) made or presented a claim to any agency of the United States; (2) knowing such claim to be false, fictitious, or fraudulent. *United States v. Ewing*, 957 F.2d 115, 119 (4th Cir. 1992). While the Government alleges that numerous claims were submitted in violation of the face-to-face requirement, the Government has failed to allege that Claimant knew such claims were false, fictitious, or fraudulent. For example, in paragraphs 38-43 of the Complaint, the Government alleges that a total of 5,844 claims were submitted to Medicare in violation of the face-to-face visit requirement resulting in $3,390,588.65 in fraudulent payments to Claimant but does not allege that Claimant *knew* these were fraudulent claims. (ECF No. 1 at 9.) Even taking the allegation as true that every single claim of the 5,844 claims was in violation of the face-to-face requirement, the scienter element is still not sufficiently pled.

The Government also alleges that they received 168 complaints where beneficiaries reported "they had received DME from SMS that they did not need, or order and that Medicare was fraudulently billed for DME without their consent." (*Id.* at 10.) While Claimant's knowledge of fraud may be implied in these cases, the Government does not ascribe a dollar amount to these alleged fraudulent claims. However, the Government does meet the threshold for 3 claims. In those claims, the Government alleges that beneficiaries "SS," "SJ," and "LR" received DME despite never requesting it, having never spoke to the ordering physician, and having never interacted with Claimant. (*Id.* at 11.) For these claims, Medicare was billed a total of $6,600. (*Id.*) Accepting the allegations as true, if Claimant ordered the DME despite the

5

beneficiaries having zero interaction with the ordering physicians or with Claimant, then Claimant would have known that such claims were fraudulent. Therefore, the Government has sufficiently alleged the Defendant currency is tied to three fraudulent claims totaling $6,600.

### B. Health Care Fraud & Conspiracy

As to the alleged health care fraud and conspiracy offenses, Claimant argues that the knowledge element is not met, and the Government failed to allege a scheme to defraud. A violation of § 1347 (health care fraud) requires the Government to prove that a defendant "knowingly and willfully execute[d] . . . a scheme or artifice . . . [1] to defraud any health care benefit program or [2] to obtain money or property from a health care benefit program by means of false or fraudulent pretenses, representations, or promises." *United States v. Palin*, 874 F.3d 418, 421 (4th Cir. 2017). These offenses require a showing of "*both* the Defendant's specific intent to defraud *and* the existence of a scheme to obtain money by means of materially false or fraudulent pretenses." *United States v. Elfenbein*, 708 F. Supp. 3d 621, 659 (D. Md. 2023). "The specific intent to defraud may be inferred from the totality of the circumstances, and need not be proven by direct evidence." *United States v. McLean*, 715 F.3d 129, 140 (4th Cir. 2013). A violation of § 1349 (conspiracy to commit health care fraud) requires the Government to prove that a defendant conspired with others to execute such a scheme. 18 U.S.C. § 1349. Just as discussed above, the Government does not sufficiently allege the knowledge or willfulness that is required for a § 1347 (and subsequently 1349) violation. At most, the Government sufficiently alleges three claims totaling $6,600.

The Government's allegation of a scheme to defraud fares no better. For health care fraud under § 1347, "[a] scheme to defraud is [] an element of the offense." *United States v. Bajoghli*,

6

785 F.3d 957, 962 (4th Cir. 2015). "While fraud can be committed simply by engaging in an isolated transaction, a scheme to defraud requires a plot, plan, or arrangement that is executed by a fraudulent transaction." *Id.* at 962-63. Aside from the three detailed claims, the Government's allegations sound in simple fraud. For example, the Government alleges that Claimant "submitted false or fraudulent claims to the United States through the Medicaid Program for reimbursement for DME supplies that were not medically necessary and were billed in violation of Medicare statutes, regulations and policies." (ECF No. 1 at 9.) At the same time, the Government stated that "[a]pproximately 95% of patients Dr. Ilupeju speaks with during the telehealth visit wants the DME item and meets the requirements for him to prescribe it" and "[m]ost did meet the requirements to be prescribed DME." (*Id.* at 12; ECF No. 13 at 3.) The scant allegations combined with the subsequent statements sound more like a scheme to make a quick buck, not a scheme to defraud. While the Government is correct that "merely because a patient qualifies for a treatment does not make the treatment legitimate, medically reasonable, or billable," the allegations are insufficient to meet the pleading standard for a scheme to defraud. While the 168 Medicare hotline complaints create smoke around a possible scheme to defraud, the Court cannot extrapolate those complaints to every claim submitted. Outside of the three specified claims for $6,600, a "plot, plan, or arrangement that is executed by a fraudulent transaction" has not been sufficiently alleged "to support a reasonable belief that the government will be able to meet its burden of proof at trial." *Bajoghli*, 785 F.3d at 962; Supp. R. G(2)(f).

### C. Leave to Amend

Though the Complaint lacks sufficient averments to support the allegations against Claimant, the Court finds that granting leave to amend would create no "prejudice" to Claimant

and would not necessarily be "futile." *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012.) Additionally, there is no evidence of "bad faith on the part of" the Government. *Id.* Considering these factors, the Court follows the general rule and permits the Government the opportunity to amend its initial complaint. *See Ostrzenski v. Seigel*, 177 F.3d 245, 252–53 (4th Cir. 1999.)

## IV. CONCLUSION

For the above-mentioned reasons, Claimant's motion to dismiss is **GRANTED** except for three claims totaling $6,600. The complaint is **DISMISSED WITHOUT PREJUDICE**, and the Government is **GRANTED** leave to amend the complaint within fourteen days of the entry of this order. The funds at issue will for the time being remain in the possession of the United States Marshals Service pending further order of this Court.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record, the United States Marshals Service, and any unrepresented party.

ENTER: September 5, 2025

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE